UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CYNTHIA M.,

                                        Plaintiff,

v.                                                                                                    1:20-CV-0711
                                                                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC              KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                                ELIZABETH HAUNGS, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                              CHRISTOPHER CARILLO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 16.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A.     Factual Background

Plaintiff was born in 1980.  (T. 144.)  She completed the 11th grade.  (T. 240.)  Generally, Plaintiff's alleged disability consists of bi-polar disoder, attention deficit hyperactivity disorder ("ADHD"), multiple personality disorder, post-traumatic stress disorder ("PTSD"), herniated discs, pinched nerve, anxiety, and paranoia.  (T. 239.)  Her alleged disability onset date is March 19, 2016.  (T. 144.)

### B.     Procedural History

On May 3, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 144.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 14, 2019, Plaintiff appeared before the ALJ, Mary Mattimore.  (T. 33-83.)  On March 29, 2019, ALJ Mattimore issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-32.)  On April 13, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 17-.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 3, 2017.  (T. 17.)  Second, the ALJ found Plaintiff had the severe impairments of: obesity, bipolar disorder, post-traumatic stress disorder ("PTSD"), panic disorder, ADHD, multilevel degenerative disc disease with cervical and lumbar radiculopathy, sacroiliitis, and left knee post-surgical tendon repair.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of

2

the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)
Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she can occasionally push and pull bilaterally and occasionally reach overhead bilaterally.  (T. 21.)[1]  The ALJ found Plaintiff could frequently, but not repetitively, reach in other directions; occasionally stoop, kneel, crouch, crawl, climb stairs and ramps; never climb ladders, ropes or scaffolds.  (*Id*.)  The ALJ found Plaintiff could perform simple routine work and make simple workplace decisions, but not at a production rate (e.g., assembly line) pace; could tolerate occasional interaction with supervisors, but only incidental interaction with coworkers and the public; could never perform tandem or team work; and could tolerate minimal changes in workplace processes and settings.  (*Id*.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 25-27.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's evaluation of Plaintiff's headaches was based on factual errors and a selective reading of the record.  (Dkt. No. 10 at 9-13.)  Second, and lastly, Plaintiff argues the ALJ's finding that Plaintiff could perform a range

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

of light work after her November 2017 car accident was not supported by substantial evidence.  (*Id*. at 13-17.)  Plaintiff also filed a reply in which she reiterated her original arguments.  (Dkt. No. 15.)

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly evaluated Plaintiff's migraine headaches.  (Dkt. No. 13 at 6-10.)  Second, and lastly, Defendant argues substantial evidence supports the ALJ's RFC finding for light work.  (*Id*. at 11-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV.   **ANALYSIS**

   A.   **Evaluation of Headaches**

Plaintiff argues the ALJ erred in her evaluation of Plaintiff's headaches throughout her determination. (Dkt. No. 10 at 9-13.) Specifically, Plaintiff argues the ALJ failed to discuss her headaches at step two and failed to properly assess her headaches at step four. (*Id.*)

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c)[2].

Failure to consider an impairment severe at step two may be harmless error if the condition was considered during subsequent steps of the sequential process. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013). Here, although the ALJ did not make a specific determination of severity at step two regarding Plaintiff's headaches,

---

[2]   On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, Plaintiff filed her claim after March 27, 2017.

any error was harmless because the ALJ considered Plaintiff's headaches at subsequent steps of the evaluation.  (T. 21.)  The ALJ concluded at step three that the medical evidence did not establish a medical diagnosis of migraine headaches in combination with evidence that Plaintiff's headaches caused alteration of awareness and significant interference with activity during the day, and therefore did not meet the criteria of Listing 11.02.  (T. 19.)  At step four, as discussed in greater detail herein, the ALJ discussed evidence in the record pertaining to Plaintiff's headaches.  Therefore, any error at step two would be harmless.

    Next, Plaintiff argues the ALJ failed to properly assess the opinion of the consultative examiner regarding limitations due to Plaintiff's headaches.  (Dkt. No. 10 at 11.)  On August 4, 2017, Nikita Dave, M.D., performed an internal medicine examination and provided a medical source statement.  (T. 386-392.)  Plaintiff indicated she had headaches since the age 18 and reported "significant improvement" since starting medication.  (T. 386.)  Plaintiff reported experiencing headaches once a month and that they could occur daily during her menstrual cycle.  (*Id*.)  She indicated she received treatment from her primary care physician and had not required emergency room treatment for headaches.  (*Id*.)  Dr. Dave opined Plaintiff "may have moderate to marked limitations for sustaining physical activity during bouts of a severe headache likely to be transient over a few hours."  (T. 389.)

    Plaintiff asserts Dr. Dave's assessment infers she would experience headaches as much as nine times a month and her headaches would last one to two hours if she took medication shortly after onset.  (Dkt. No. 10 at 11-13.)  Plaintiff's assertion is purely speculative and not based on any evidence in the record.  To be sure, Dr. Dave

indicated Plaintiff "may have" up to marked limitations for "a few hours" during a headache. (T. 389.) However, Plaintiff assertion that this equates to nine debilitating headaches a month is without support from the medical evidence in the record.

As outlined by the ALJ, the evidence as a whole did not support disabling limitations due to headaches. Indeed, in her current disability application, Plaintiff did not allege headaches as an impairment. (T. 132.) Plaintiff sought treatment for various impairments between her alleged onset date and the hearing; however, Plaintiff did not complain to treating providers of monthly headaches or seek emergency treatment for headaches. At her hearing Plaintiff testified that the more activity she does the more likely she is to have a headache. (T. 65.) Plaintiff testified that overusing her arms causes spasms and lead to migraines. (*Id*.) She stated she will take her medication for pain. (*Id*.) The ALJ's RFC determination limiting Plaintiff to only occasionally pushing, pulling and reaching overhead is consistent with Plaintiff's testimony that overusing her arms can cause headaches. (T. 21.)

Further, the ALJ considered Dr. Dave's opinion in her assessment of Plaintiff's migraines. (T. 24-25.) The ALJ noted the doctor's opinion that Plaintiff was moderately to markedly limited from sustaining physical activity during a headache. (T. 24.) The ALJ concluded Dr. Dave's opinion was "somewhat persuasive" because it was based on an examination and noted she relied on the opinion in limiting Plaintiff to light work. (*Id*.)

The ALJ noted Plaintiff used medication on an as-needed basis for headaches. (T. 23, 1344, 1409.) In support of her conclusion the ALJ cited evidence from December 2017 at which time Plaintiff was diagnosed with "post-traumatic headache, unspecified, not intractable" (T. 1344); however, at an October 2018 visit Plaintiff did not

complain of headache or other neurological symptoms (T. 1409).  Indeed, in November 2018, Plaintiff did not complain of headaches and informed providers medication helped her deal with day-to-day pain and allowed her to "participate [in] activity of daily living [with] relatively minor discomfort."  (T. 602.)  In March 2018, Plaintiff presented for a general physical examination.  (T. 1459.)  Plaintiff denied medication side effects and denied headaches.  (T. 1460.)  Plaintiff was assessed with various diagnoses, including "chronic migraine without aura, not intractable, without status migrainosus."  (T. 1462.)

Lastly, the ALJ concluded Plaintiff's allegation of symptom severity was not supported by the record.  (T. 23.)  The ALJ specifically noted Plaintiff's headaches were treated with medication on as needed basis.  (*Id*.)  The ALJ concluded that based on Plaintiff's use of medication and her treatment regimen, her impairments did not cause disabling limitations.  (T. 29.)  Plaintiff may disagree with the ALJ's conclusion; however, the Court can reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

Overall, substantial evidence supported the ALJ's determination that Plaintiff's headaches were not disabling. The ALJ relied on the evidence in the record as a whole including Dr. Dave's opinion, Plaintiff's testimony, and objective medical evidence. Although Plaintiff offers an alternative interpretation of Dr. Dave's limitations, Plaintiff's offers no objective evidence in the record to support her conclusion Plaintiff would suffer disabling headaches multiple times a month.

### B.  RFC Determination

Plaintiff argues the ALJ's RFC is legally deficient because the ALJ "had no function by function medical opinion" of Plaintiff's limitations after her November 2017 car accident.  (Dkt. No. 10 at 13-17.)  Plaintiff's argument fails.

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  The ALJ, not a medical source, is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c).  Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017)

(internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion containing functional limitations after her motor vehicle accident is without merit.

### C. Plaintiff's Subjective Complaints

Plaintiff argues the ALJ's conclusion that the record did not support Plaintiff's allegations of symptom severity was based on a factual mischaracterization of the record. (Dkt. No. 10 at 15-17.) Plaintiff argues, in making her determination, the ALJ factually misrepresented treatment notations from Plaintiff's chiropractor and physical therapist. (*Id*. at 15-16.) Although the ALJ erred in citing evidence in the record which did not, on its face, support the ALJ's conclusion, any error would be harmless because substantial evidence nonetheless supported the ALJ's overall determination.

The ALJ must employ a two-step analysis to evaluate Plaintiff's reported symptoms. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "can reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit Plaintiff's ability to do work. *See id.*

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 22.)

Here, the ALJ concluded Plaintiff's impairments were not as severe as alleged, in part, based on treatment notes which reflected normal range of motion and normal strength.  (T. 23.)  In support of her conclusion, the ALJ cited multiple treatment notations.  The ALJ cited emergency room notations from November 2017 at which time the provider noted Plaintiff had normal range of motion and normal strength (T. 505); September 2017 emergency room treatment notations observing normal range of motion and normal strength (T. 534); March 2018 emergency room treatment notations observing normal range of motion and normal strength (T. 685); February and June 2018 chiropractic notations providing specific degrees of range of motion (T. 746, 763); and physical therapy notations providing specific degrees of range of motion and normal motor strength (T. 1337).

Plaintiff argues the ALJ factually mispresented the chiropractic treatment notations from February and June 2018 because the chiropractor's notations did not state Plaintiff's range of motion was within normal limits.  (Dkt. No. 10 at 15-16.)  Chiropractic notations cited by the ALJ provided a specific degree of Plaintiff's cervical and lumbar spinal range of motion.  (T. 746, 763.)  To be sure, without further guidance, a lay person is unable to determination whether, for example, 50 degrees of flexion in the cervical spine, is within the normal range.  Therefore, the ALJ erred in her

12

conclusion that treatment notations from February and June 2018 indicated Plaintiff had a normal range of motion.

However, the ALJ's error here is harmless because the ALJ "employed the proper standards and considered a wide body of evidence in assessing Plaintiff's subjective complaints." *Chelsea V. v. Comm'r of Soc. Sec.,* No. 20-CV-501, 2021 WL 2649650, at *7 (W.D.N.Y. June 28, 2021); *see Sarah C. v. Comm'r of Soc. Sec.*, No. 19-CV-1431, 2021 WL 1175072, at *6 (N.D.N.Y. Mar. 29, 2021) (ALJ's erroneous consideration of a factor in assessing claimant's credibility was harmless where factor "was merely one of several pieces of evidence on which the ALJ relied to reach her decision"); *Scarpino v. Colvin*, No. 15-CV-6231, 2016 WL 5372493, at *15 (W.D.N.Y. Sept. 26, 2016) (ALJ's misstatement about claimant's mental health treatment did not justify remand where "[t]he remaining evidence in the record identified by the ALJ was sufficient to support his adverse credibility determination").  Here, the ALJ did not rely solely on two chiropractic treatment notations to support her conclusion.  The ALJ cited other treatment notations in the record which stated unambiguously she had normal range of motion and full motor strength. (T. 23.)  Moreover, the ALJ provided other reasons to support her conclusion that Plaintiff's subjective complaints were not as severe as alleged.

In making her determination, the ALJ relied on the factors outlined in the regulations to support her determination.  As noted above, the ALJ considered objective medical evidence, such as range of motion and strength.  (T. 23); 20 C.F.R. § 416.929(c)(2).  The ALJ discussed the type of treatment Plaintiff received for her impairments, including medication.  (T. 23); 20 C.F.R. § 416.929(c)(3)(iv)-(vii).  The ALJ

further relied on Plaintiff's activities of daily living. (T. 23-24); 20 C.F.R. § 416.929(c)(3)(i). Lastly, the ALJ relied on statements made by medical sources. (T. 23-24); 20 C.F.R. § 416.929(c)(2). Therefore, any error the ALJ made was harmless because the ALJ properly relied on the factors outlined in the regulations and considered a wide body of evidence in assessing Plaintiff's subjective complaints.

The Court cannot set aside the Commissioner's disability determination unless it finds that the decision is based on either legal error or factual findings that are unsupported by substantial evidence. The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek,* 139 S. Ct. at 1154. "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). In particular, it requires deference "to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:

William B. Mitchell Carter
U.S. Magistrate Judge